# AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

I, Brett Heinonen, Special Agent of U.S. Homeland Security Investigations Nogales, Arizona, being duly sworn, depose, and state as follows:

## Introduction

1. I, Brett Heinonen, your affiant, is an investigator or law enforcement officer of the United States within the meaning of 18 United States Code (U.S.C.) § 2510(7), and is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in 18 U.S.C. § 2516. Your Affiant is cross designated by the Drug Enforcement Agency (DEA) and is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated under Title 21 U.S.C.

2. Your Affiant is a Special Agent with the United States Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI). Your Affiant has been a Special Agent since November of 2020. Your Affiant is assigned to the Assistant Special Agent in Charge (ASAC), Nogales, Arizona office.

3. As a Special Agent with HSI, Your Affiant is responsible for investigating and enforcing violations of federal law to include the enforcement of controlled substances, immigration, money laundering, and various Customs violations.

4. Your Affiant graduated from the Criminal Investigator Training Program, and the HSI Special Agent Training Course, located at the Federal Law Enforcement Training Center in Glynn County, Georgia. At this institution, Your Affiant received specialized training to include but not limited to the following areas: illegal drug investigations,

immigration investigations, fraud investigations, cyber investigations, import/export investigations, child pornography investigations, firearms, defensive tactics, surveillance, and undercover operations.

5.     In addition to Your Affiant's experience as a Special Agent with HSI, Your Affiant has 10 years of experience with Customs and Border Protection (CBP) as a Border Patrol Agent (BPA) in Casa Grande, Arizona. During Your Affiant's tenure as a BPA, Your Affiant conducted inspections on vehicles and persons at an US Immigration checkpoint. These inspections consisted of searching for violations concerning customs law, immigration law, and narcotics or contraband smuggling. Your Affiant has participated in many narcotics seizures and narcotics related arrests. Your Affiant was also assigned to the Field Training Unit, Mobile Surveillance Unit, and Casa Grande's station Targeting Enforcement Unit.

6.     By virtue of Your Affiant's employment as a Special Agent, Your Affiant has performed various tasks, which include, but are not limited to: (a) functioning as a surveillance officer, thus observing and recording movements of persons trafficking in drugs/bulk illicit cash and those suspected of trafficking in drugs/bulk illicit cash; (b) interviewing witnesses, cooperating sources ("CS") and sources of information ("SOIs") relative to the illegal trafficking of drugs and the distribution of monies and assets derived from the illegal trafficking of drugs (to include the laundering of drug-trafficking proceeds).

7.     Through the course of conducting drug/currency investigations, Your Affiant has personally helped to interview informants and persons involved in the distribution of illegal drugs. Your Affiant has consulted with other experienced investigators concerning the

practices of drug-traffickers and the best methods of investigating them. In preparing this Affidavit, Your Affiant has conferred with other Special Agents and law enforcement officers involved in this investigation. Furthermore, Your Affiant has personal knowledge of the following facts or have learned them from the individuals mentioned herein.

8.  Your Affiant submits this affidavit in support of an Application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of the contents of an electronic communication device capable of accessing the internet (the Target Smartphone, defined below), and the extraction from the Target Smartphone of electronically stored information further described in Attachment B hereto. Because this affidavit is being submitted for the limited purpose of securing a warrant to search the Target Smartphone, your Affiant has set forth only the facts which your Affiant believes are necessary to establish probable cause to search the Target Smartphone.

## Identification Of The Devices To Be Examined

9.  The electronic communication devices to be examined is described as: One (1) Red Apple iPhone cellular telephone (located within Evidence Bag Number A9405573), model numbers unknown, International Mobile Equipment Identity (IMEI) number 353969100157741 (hereinafter, "Target Smartphone"). The Target Smartphone is currently being stored in the HSI Nogales low risk vault located at 41 Paseo De Yucatan, Rio Rico, AZ 85648.

## Background On Smartphones

10. Based upon my knowledge, training, and experience, as well as information related to your Affiant by law enforcement officers and others experienced in the forensic examination of electronic communication devices, your Affiant knows that certain types

of cellular telephones referred to as "smartphones" (such as the Target Smartphone) generally offer more advanced computing ability and internet connectivity than standard cellular telephones. Provided that internet access has been purchased through an electronic communication service provider for a particular smartphone, a smartphone is capable of running complete operating system software, has full access to the internet and/or electronic mail (including file attachments), is capable of text and instant messaging, can create and edit documents created with computer software, is capable of storing large amounts of data, and can be interfaced with desktop and laptop computers.

11.     As described in Attachment B hereto, this affidavit seeks permission to locate not only data files that might serve as direct evidence of the crimes described in the warrant, but also for evidence that establishes what individual(s) used the Target Smartphone as well as the purpose of its use. Additionally, this affidavit seeks information about the possible location of other evidence.

12.     As described in Attachment B hereto, this affidavit also seeks permission to search and seize certain electronic records that might be stored within the Target Smartphone. Some of these electronic records might take the form of files, documents, or other data that are user-generated. Some of these electronic records, as explained below, might take a form that becomes meaningful only upon forensic analysis.

13.     Although some of the records requested in this affidavit might be found in the form of user-generated documents (such as electronic format documents and picture and movie files), an electronic communication device (such as the Target Smartphone) can contain other forms of electronic evidence that are not user-generated. In particular, electronic communication devices may contain records of how it has been used and/or the

person(s) who utilized the electronic communication device. Based upon my knowledge, training, and experience, as well as information related to me by law enforcement officers, and other persons involved in the forensic examination of electronic communication devices, I know that:

a. Data on electronic communication devices not currently associated with any file can provide evidence of a file that was once on the electronic communication device, but has since been deleted or edited, or of a deleted portion of a file;

b. Virtual memory paging systems can leave traces of information on an electronic communication device that can be used to determine what tasks and processes were recently in use;

c. Web browsers, e-mail programs, social media platforms, and chat programs store configuration information on the electronic communication devices that can reveal information such as online nicknames and passwords;

d. Operating systems can record additional information, such as the attachment of peripheral electronic devices, and the number of occasions on which the peripheral electronic devices were accessed;

e. Computer file systems can record information about the dates that files were created and the sequence in which they were created. This information may be evidence of a crime and/or indicate the existence and/or location of evidence in other locations on the electronic communication device;

f. When an electronic communication device has more than one user, files can contain information indicating the dates and times that the files were created as

  well as the sequence in which the files were created, and whether a particular user accessed other information close in time to the file creation dates, times, and sequences;

g. The types of evidence described above may be direct evidence of a crime, indirect evidence of a crime indicating the location of evidence or a space where evidence was once located, contextual evidence identifying an electronic communication device user, and contextual evidence excluding an electronic communication device user.  All these types of evidence may indicate ownership, knowledge, and intent to commit a given offense; and

h. The foregoing type of evidence is not "data" that can be segregated, that is, this type of information cannot be abstractly reviewed and filtered by a seizing or imaging agent and then transmitted to investigators.  Rather, evidence of this type is a conclusion, based on a review of all available facts and the application of knowledge about how electronic communication devices operate and how electronic communication devices are used.  Therefore, contextual information necessary to understand the evidence described in Attachment B hereto also falls within the scope of the warrant.

**Characteristics Of Individuals Involved in Drug Trafficking Organizations**

14. Based upon my knowledge, experience, and training in Drug Trafficking Organizations (DTO) investigations, as well as the training and experience of other law enforcement officers with whom your Affiant has had discussions, your Affiant knows that there are certain characteristics common amongst individuals involved in DTOs. Individuals involved in drug-trafficking activity tend to:

a. Retain records pertaining to financial transactions and the persons for whom the transactions are being conducted;

b. Collect data pertaining to other co-conspirators involved in drug-trafficking activity, including drug types and quantities provided, as well as monies owed and/or paid for illegal controlled substances;

c. Possess and maintain records reflecting bank transactions and/or money transfers;

d. Maintain collections of records that are in a digital or electronic format in a safe, secure, and private environment, including electronic communication devices (such as the Target Smartphone). These records are often maintained for several years and are kept close in close proximity to the drug-trafficker, usually at the individual's residence, to enable the drug-trafficker to review the records, which are highly valued;

e. Correspond with and/or meet with other drug-trafficking associates to share drug-trafficking information and/or materials;

f. Retain correspondence from other drug-trafficking co-conspirators relating to drug-trafficking activity; and

g. Maintain lists of names, addresses, and/or telephone numbers of individuals with whom the drug-traffickers have been in contact and/or conducted drug-trafficking activity.

**Probable Cause**

15.     On February 23, 2023, Your Affiant responded to a call from CBP at the DeConcini Port of Entry (POE) in Nogales, Arizona. CBP had apprehended Yadin

PADILLA-Aguilar (a Mexican citizen) after he entered the U.S. driving a 2001 Toyota Corolla, which was found to contain 30.96 kilograms (kg) of fentanyl pills. PADILLA-Aguilar was the sole occupant but not the registered owner of the 2001 Toyota Corolla. He later provided that his mother was the owner of the vehicle.

16. On that day, CBP Officers working primary inspection, determined PADILLA-Aguilar be sent to secondary for further inspection based off PADILLA-Aguilar's crossing history of having only crossings through the Port of Douglas, Arizona.

17. Also, during this conversation with CBP Officers working primary inspection, PADILLA-Aguilar stated he went to Nogales, Mexico to look at a Jeep to purchase. However, he also provided to the CBP Officers that he never intended to purchase the Jeep, but he just wanted to view it. PADILLA-Aguilar stated that he had $200 United States Dollars, and was going to Tucson, AZ to purchase "some items."

18. Based on this interaction, CBP Officers referred PADILLA-Aguilar to secondary inspection. There, a Z-Portal scan of the 2001 Toyota Corolla, revealed anomalies located in the vehicle's firewall, dashboard, back rest of the seat, rockers, and quarter panels. Further physical inspection of the area resulted in the discovery of two hundred and fifty-one (251) packages hidden in the vehicle's firewall, dashboard, back rest of the seat, rockers, and quarter panels. Subsequent lab tests of representative samples confirmed that the two hundred and fifty-one (251) packages contained fentanyl pills and weighed approximately 30.96 kilograms. An additional package weighing eleven (11) grams was found on March 9, 2023.

19. PADILLA-Aguilar elected to speak with law enforcement agents after receiving *Miranda* warnings. During this statement, he explained that he met a woman

named "Maribel" prior to February 23, 2023. At that time, Maribel asked if PADILLA-Aguilar would be willing to transport cash currency from Tucson, Arizona to Mexico. PADILLA-Aguilar stated that he initially declined, but later agreed to do so because he needed money. Maribel then connected PADILLA-Aguilar with an individual named Carlos. PADILLA-Aguilar then communicated with Carlos via WhatsApp. On February 23, 2023, PADILLA-Aguilar explained that he met Carlos at a restaurant in Nogales, Sonora, Mexico. Carlos then took PADILLA-Aguilar's vehicle so he could put a tracker on it and had it for approximately 2.5 hours. After approximately 2.5 hours, Carlos returned the vehicle to PADILLA-Aguilar. PADILLA-Aguilar explained that he asked if there were any other items in the vehicle besides the tracker; PADILLA-Aguilar stated that Carlos told him "No" in response to his question. PADILLA-Aguilar admitted to agents that he suspected the currency he would be transporting was likely drug proceeds.

20. At the time of the seizure, PADILLA-Aguilar was in possession of the "Target Smartphone." While the seizure was being conducted, the Target Smartphone received two messages that read, "Me avisa oiga pa prender el gps lo prendo despues de la pasada pa que no lo detecte la tengologia" and "Por si pasa rayos apagado no lo agarra oiga!". Google translate of the message; "Let me know, hear to turn on the GPS, I'll turn it on after the pass so that the technology doesn't detect it" and "In case lightning strikes, don't catch it, hear!"

21. PADILLA-Aguilar stated the conversations were through text on the application called WhatsApp. PADILLA-Aguilar stated that the messages automatically delete.

9

22.     Through my training and experience, WhatsApp is commonly utilized by drug carriers, as this is a way Drug Trafficking Organizations (DTOs) communicate with their smugglers to guide them when crossing their drugs.

23.     A review of PADILLA-Aguilar's crossing history reveals that he's only crossed through Nogales, Arizona on February 23, 2023. All of his previous forty (40) crossings have been through Douglas, Arizona. Notably, CBP Officers did not find a tracker on the vehicle.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

24.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on electronic devices. This information can sometimes be recovered with forensic tools.

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

25.     Nature of examination. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Devices to human inspection in order to determine whether it is evidence described by the warrant.

26.     Manner of execution. Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

27. Based upon the foregoing, your Affiant believes that probable cause exists to search the Target Smartphones for the items set forth in Attachment B hereto. Your Affiant believes that the Target Smartphones contain evidence relating to the commission of a criminal offense, that is, the importation of controlled substances, in violation of Title 21, United States Code, Section 952(a), as well as constitutes property designed for use, intended for use, or used in committing the aforementioned crime.

I swear, under penalty of perjury, that the foregoing is true and correct.

BRETT W HEINONEN
Digitally signed by BRETT W HEINONEN
Date: 2023.03.30 11:12:13 -07'00'

Brett Heinonen
Special Agent, ICE/HSI

Subscribed and sworn to before me telephonically,

this  30th  day of March 2023.

Hon. Bruce G. Macdonald
United States Magistrate Judge